Bradley WELLS

v.

CHATTANOOGA BAKERY, INC., et al.

Court of Appeals of Tennessee.
Middle Section, at Nashville.

March 25, 2014.

Published Pursuant to Tenn.
Ct.App. R. 11.

Todd Hancock, Nashville, Tennessee, for the appellant, Bradley Wells.

Stephen J. Zralek, Nashville, Tennessee, for the appellees, Chattanooga Bakery, et al.

**OPINION**

ANDY D. BENNETT, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, M.S., P.J., and FRANK G. CLEMENT, J., joined.

Plaintiff brought suit against defendants alleging the unlawful use of his image and likeness and asserting statutory claims for violation of the Tennessee Personal Rights Protection Act and the Tennessee Consumer Protection Act, and common law claims for unjust enrichment, accounting, and conversion. Upon defendants' motion, the trial court dismissed the complaint for lack of subject matter jurisdiction based on complete preemption by the Copyright Act. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Over thirty years ago, appellee Chattanooga Bakery, Inc. ("CBI"), hired a now defunct advertising agency co-owned by Bob Waller to create a nostalgic-looking advertisement for CBI to use in marketing its MoonPie. Originally, the advertisement was in the form of a brochure filled

with colorful illustrations and color photographs of MoonPies and of the CBI workers interspersed with promotional language.[1] The brochure's first page is a black and white photograph in which a puppy is gazing at a MoonPie that an unidentified, young, overalls-and-baseball-cap-clad, blonde boy is holding while resting on crumbling cinder block steps beneath an old screen door.

Mr. Waller wanted to give the MoonPie advertising material a Norman Rockwell "warm and fuzzy" feel, so he asked a long-time family friend for permission to use her ten-year-old son, whom he considered to have an "everyday, Opie/Andy Griffith, Tom Sawyer look about him," as the model for the photograph. No written documents memorializing the agreements between Mr. Waller's advertising agency and CBI or between the advertising agency and the young boy's parents ever existed, but the boy's mother described the deal as follows:

Q. What did you understand was going to be taking place before you let your son go to the photo shoot?

A. I knew that Bob was going to take [my son] to be part of a photo shoot for an ad. At the time I didn't even really know what it was for.

Q. Did you know that it was for Moon-Pie?

A. I don't think that I did, huh-uh. I mean, I think I did later, but I don't think at the time. You know, Bob just said that he would like to have [my son], because he was blonde headed and fit the norm for whatever he needed at the time.

Q. And your relationship was strong enough that you trusted him to take your son.

A. Oh, right, right.

Q. For whatever reason.

A. Right. Whatever he needed to, he could—you know, it was okay.

Q. It's my understanding that your communication was solely with Bob Waller and not with Chattanooga Bakery; is that right?

A. Right, just with Bob.

Q. That's both before and after the photo shoot?

A. Uh-huh. I didn't have any communication with Chattanooga Bakery at all.

Q. Things were a lot more relaxed in the '70s.

A. Right, definitely.

Q. And I understand that there was no written contract at the time.

A. Not that I remember.

Q. Is it also safe to assume that you never—you gave consent for your son to be there at the photo shoot, right?

A. Right....

Q. And for your son to be the model of this photograph, right?

A. To be in a photograph.

Q. Okay.

A. I don't know that the term model was ever used, but just to be in a photograph.

Q. To be in a photograph.

---

1. One cartoon illustration is of an elderly southern gentleman holding what appears to be a mint julep in one hand and a MoonPie in the other. The text above this illustration reads, "MOON PIES are as much a part of the South as magnolia trees and mint juleps. In fact, many Southerners' fondest recollections are of Sunday afternoons spent sitting on the front porch eating MOON PIES and drinking RC Colas." The brochure also states, "If you're interested in doing business with us, call or write us on your company letterhead. Or better yet, if you're in the neighborhood stop in and see us. We'll sit on the front porch and talk a deal. The RC Colas and MOON PIES are on us."

A. To be in an ad for something they were doing.

. . .

Q. Did you personally place any limits on him at the time?

A. No.

Q. Did you personally place any limits on him after the time?

A. No.

Q. How about your husband?

A. No.

In exchange for modeling for the photo, the young boy was given a chance to skip school, some cash, and free MoonPies.

Mr. Waller's advertising agency placed no limitation on CBI's use or modification of the black and white photograph taken. A later version of the photograph includes an RC Cola—manufactured by appellee Dr. Pepper/Seven Up, Inc. ("DPSU")—that was digitally placed into the photo after CBI obtained a digital copy of it in 1999 by scanning the first page of the old brochure.[2] CBI used the photograph in other mediums—a commemorative tin, bottleneck ringer, cigar box, book of Moon-Pie Memories, and a knit blanket—to market MoonPie and RC Cola.

In 2011, appellant Bradley Wells noticed that the photograph in which he had modeled thirty-four years earlier was being used in these other mediums. Much aggrieved, Mr. Wells filed a complaint against CBI and DPSU[3] asserting five claims: statutory claims for violations of the Tennessee Personal Rights Protection Act and the Tennessee Consumer Protection Act, and common law claims for unjust enrichment, accounting, and conversion. The complaint alleges that CBI and DPSU unlawfully used Mr. Wells's image and "likeness," as defined in Tenn.Code Ann. § 47–25–1102(3), to promote their products, and seeks compensatory damages, punitive damages, and treble damages and attorney fees under the Tennessee Consumer Protection Act.[4]

Pursuant to Tenn. R. Civ. P. 12.02(1), CBI and DPSU moved to dismiss for lack of subject matter jurisdiction, asserting that the Copyright Act of 1976 preempted Mr. Wells's claims. Mr. Wells responded in opposition to the motion. The parties filed supporting memoranda, deposition excerpts, exhibits, and affidavits. Following a hearing and by memorandum opinion and order entered March 4, 2013, the trial court concluded "that all of the claims asserted by [Mr. Wells] are equivalent to the exclusive rights provided by the Copyright Act, and therefore are preempted." The court found that Mr. Wells failed to meet his burden of proving facts that established subject matter jurisdiction and, accordingly, dismissed the complaint.[5]

Mr. Wells perfected this appeal.

---

2. No one knows the whereabouts of the original photograph or of the photographer.

3. Dr. Pepper Snapple Group, Inc. was originally named a defendant, but won its motion to dismiss for lack of personal jurisdiction.

4. Mr. Wells contends that CBI and DPSU had no right to use the photograph for anything other than the brochure.

5. CBI and DPSU filed a Tenn. R. Civ. P. 12.02(1) motion to dismiss challenging the trial court's subject matter jurisdiction. In support of their motion, CBI and DPSU relied on extrinsic material gleaned from deposition testimony and affidavits to "attack[ ] the facts serving as the basis for jurisdiction...." *Schutte v. Johnson*, 337 S.W.3d 767, 770 (Tenn.Ct.App.2010). A party may assert either a facial challenge or a factual challenge to the court's subject matter jurisdiction. *Staats v. McKinnon*, 206 S.W.3d 532, 542 (Tenn.Ct.App.2006). "A facial challenge makes war on the complaint itself ... [and] asserts that the complaint, considered from

ISSUE PRESENTED

After studying the record, we discern the dispositive issue to be whether the Copyright Act of 1976 preempts the causes of action set forth in Mr. Wells's complaint.

ANALYSIS

■ Whether federal law preempts a state statute or common law cause of action is a question of law that we review de novo. *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn.2010). CBI and DPSU contend that all of Mr. Wells's causes of action, despite being pled as state statutory or common law claims, involve the rights and subject matter of the Copyright Act. Thus, we must determine whether the Copyright Act preempts these claims.

I. Preemption by Federal Law

As the Sixth Circuit has stated:

The Copyright Act is unusually broad in its assertion of federal authority. Rather than sharing jurisdiction with the state courts as is normally the case, the statute expressly withdraws from the state courts any jurisdiction to enforce the provisions of the Act and converts all state common or statutory law "within the general scope of copyright" into

federal law to be uniformly applied throughout the nation.

*Ritchie v. Williams*, 395 F.3d 283, 286 (6th Cir.2005). This is a statement of the doctrine of complete preemption which "recharacterize[s] a state law complaint ... as an action arising under federal law." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Section 301 of the Copyright Act sets forth the Act's preemptive scope:

(a) On and after January 1, 1978,[6] all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—

(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103,

---

top to bottom, fails to allege facts that show that the court has power to hear the case." *Id.* Alternatively, "[a] factual challenge denies that the court actually has subject matter jurisdiction as a matter of fact even though the complaint alleges facts tending to show jurisdiction." *Id.* at 543. A factual challenge "puts at issue the sufficiency of the evidence to prove facts that would bring the case within the court's subject matter jurisdiction," creates genuine issues of material fact, "but [ ] does not require the court to convert the motion into one for summary judgment." *Id.* In a factual challenge to subject matter jurisdiction at the motion to dismiss stage, the

plaintiff bears the burden of proving facts demonstrating that the court has jurisdiction to adjudicate the claim. *See id.*

**6.** The complaint references "approximately 1977" as the year in which the photograph was taken. However, the parties do not know whether the date of its first distribution to the public (i.e., its "publication," as defined by 17 U.S.C. § 101) was in 1977 or 1978. We note that if the photograph was first published in 1977, then the Copyright Act of 1909 would apply. The parties apply the Copyright Act of 1976 (effective January 1, 1978) in their arguments.

including works of authorship not fixed in any tangible medium of expression; or

[ ... ]

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106[.]

17 U.S.C. § 301. It is well-recognized that "the scope of the Copyright Act's subject matter is broader than the scope of the Act's protections." *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 455 (6th Cir. 2001).

Mr. Wells concedes that his "image and likeness were fixed in a tangible medium of expression"—the decades-old, copyrightable [7] photograph—so we must examine the remaining two requirements which, if satisfied, necessitate the preemption of his claims in favor of the Copyright Act's rights and remedies. These requirements are that:

(1) the work must come within the scope of the "subject matter of copyright" as set forth in Section 102 and 103 of the Copyright Act; and (2) the rights granted under state law must be equivalent to any of the exclusive rights within the scope of federal copyright protection.

7. The fact that the photograph at issue was never registered with the United States Copyright Office and does not contain a copyright notice has no bearing on this case because registration is simply a prerequisite to bringing a claim of copyright infringement under 17 U.S.C. § 411. The broad preemption doctrine embodied in 17 U.S.C. § 301 applies regardless of whether the underlying work is registered with the Copyright Office. *See Stanford v. Caesars Entm't, Inc.*, 430 F.Supp.2d 749, 755 n. 4 (W.D.Tenn.2006).

8. The parties characterize all of the other items on which the photograph was reproduced as derivative works.

*Stanford v. Caesars Entm't, Inc.*, 430 F.Supp.2d 749, 755 (W.D.Tenn.2006) (citing *Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir.2004)).

### i. Subject Matter

■ Copyright protection subsists in "original works of authorship fixed in any tangible medium of expression ... from which they can be perceived, reproduced, or otherwise communicated...." 17 U.S.C. § 102(a). "[P]ictorial, graphic, and sculptural works" explicitly qualify as "works of authorship" worthy of copyright protection. 17 U.S.C. § 102(a)(5). The work at issue here falls within the subject matter requirement of 17 U.S.C. § 301 because it is an original black and white photograph that was included in a brochure and later reproduced onto derivative works [8] such as the bottleneck ringer. *See* 17 U.S.C. § 101 (defining "pictorial, graphic, and sculptural works" to include photographs); 17 U.S.C. § 103 (providing that the subject matter of copyright includes derivative works).

In his claims for violations of the Tennessee Personal Rights Protection Act and the Tennessee Consumer Protection Act, and for unjust enrichment, accounting, and conversion, Mr. Wells alleges unlawful use of his "picture, image and likeness." This allegation, which is central to each cause of

A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or *any other form in which a work may be recast, transformed, or adapted*. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101 (emphasis added).

action Mr. Wells asserts, is based on the premise that the photograph CBI and DPSU used to market their products evokes his personal identity, which is not subject to copyright protection. While we agree with Mr. Wells that his "image and likeness are not copyrightable," the facts do not support his claim that the photograph contains his likeness at all. The model in the photograph appears as an anonymous character (a timeless boy[9]) and nothing identifies the young boy as Mr. Wells. In his deposition, Mr. Wells admitted that his looks have changed since he was ten-years-old and could not recall anyone who recognized him as the person in the photograph. We credit the trial court's unchallenged factual findings that:

> Wells is not even identifiable on at least two of the objects on which [CBI and DPSU] used the Photograph—the blanket and the cigar box. Using different colored fabric, [CBI and DPSU] projected the Photograph onto the blanket. Although the image of a boy is recognizable, the image contains no identifiable features that would allow one to recognize [Mr. Wells] as the model for that Photograph in that medium. Similarly, [CBI and DPSU's] use of the Photograph on the cigar box cuts off the top of the boy's head, so that the boy is not recognizable or identifiable.

We find that Mr. Wells's claims under the Tennessee Personal Rights Protection Act and the Tennessee Consumer Protection Act, and his claims for unjust enrichment, accounting, and conversion, as explained in more detail below, do not involve the use or appropriation of his personal traits or identity, but rather, CBI and DPSU's use of a copyrightable photograph that includes, among other things, an unidentifiable young boy who happens to be Mr. Wells. This falls within the subject matter of copyright. Accordingly, each state law claim that Mr. Wells asserts satisfies the subject matter requirement for preemption.

### ii. Equivalency

In analyzing equivalency, courts apply " 'a functional test' to determine whether the state law right at issue is equivalent to any of the exclusive rights under Section 106 of the Copyright Act." *Stromback*, 384 F.3d at 301. Section 106, in relevant part, gives a copyright owner the "exclusive rights to do and to authorize" reproduction of the copyrighted work in copies, preparation of derivative works based upon the copyrighted work, and distribution of copies of the copyrighted work to the public. 17 U.S.C. § 106. A "state law right at issue is equivalent to any of the exclusive rights under § 106 if 'the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights.' " *Stanford*, 430 F.Supp.2d at 758 (quoting *Stromback*, 384 F.3d at 301).

Conversely, if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively dif-

---

9. Mr. Wells testified as follows:
Q. And from your memory, how would you describe that photograph? Taking yourself out of it, how would you describe the photograph?
A. A little boy and a dog with a MoonPie in front of an old store.

Q. And what's the—what's sort of the—would you agree that it has a timeless feel to it?
A. I think that it was meant to look older than it was, if that's what you mean.

ferent from a copyright infringement claim.

*Id.* Additionally, we may "review the facts as pled by the plaintiff in order to determine whether the acts giving rise to the state law claim are merely acts of copyright infringement." *Stromback,* 384 F.3d at 304.

### A. Statutory Right of Publicity

As to Mr. Wells's primary claim, the complaint alleges that CBI and DPSU "have knowingly and [sic] continued to use and infringe upon [his] property right by the use of his picture and likeness as an item of commerce for purposes of advertising products, merchandise, and goods without [his] prior consent" and that "[t]he repeated use of the likeness, image, and/or picture of Mr. Wells by [CBI and DPSU] without his written consent is a violation of the Tennessee Personal Rights Protection Act ("TPRPA")." The TPRPA—Tennessee's statutory right of publicity—provides, in pertinent part:

> Any person who knowingly uses or infringes upon the use of another individual's name, photograph, or likeness in any medium, in any manner directed to any person other than such individual, as an item of commerce for purposes of advertising products, merchandise, goods, or services ... without such individual's prior consent, or, in the case of a minor, the prior consent of such minor's parent or legal guardian ... shall be liable to a civil action.

Tenn.Code Ann. § 47–25–1105(a). " 'Likeness' means the use of an image of an individual for commercial purposes." Tenn.Code Ann. § 47–25–1102(3). The TPRPA was intended to " 'create an inheritable property right for those people who use their names or likenesses in a commercial manner, such as an entertainer or sports figure—someone who uses his or

her name for endorsement purposes.' " *Apple Corps Ltd. v. A.D.P.R., Inc.,* 843 F.Supp. 342, 348 (M.D.Tenn.1993) (quoting Senator Kyle, sponsor of the TPRPA, from the April 5, 1984 audio recording of the Tennessee legislative session) (emphasis omitted) (internal punctuation omitted). Celebrity or average Joe, the key is that "to assert the right of publicity, a plaintiff must demonstrate that there is value in associating an item of commerce with his identity." *Landham v. Lewis Galoob Toys, Inc.,* 227 F.3d 619, 624 (6th Cir. 2000).

Mr. Wells testified that he is neither a model nor a celebrity and there are no facts indicating that his identity is commercially valuable. More importantly, as discussed above, Mr. Wells has not presented facts linking the photograph that CBI and DPSU used and reproduced for marketing to him as an individual. It follows that Mr. Wells's identity is unrelated to any promotions, advertisements, or sales of MoonPie or RC Cola. His claim for damages arises out of CBI and DPSU's reproduction and derivation of the photograph itself, both exclusive rights pursuant to section 106 of the Copyright Act.

Because Mr. Wells's TPRPA claim meets the subject matter and equivalency requirements, we conclude that it is preempted by the Copyright Act.

### B. Tennessee Consumer Protection Act

The Tennessee Consumer Protection Act ("TCPA") was enacted "[t]o protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce...." Tenn.Code Ann. § 47–18–102. In his complaint, Mr. Wells alleges that CBI and DPSU have willfully and knowingly "caused a significant likelihood of confusion and/or misunderstanding as to [his]

sponsorship, endorsement, approval and/or certification of the products, merchandise and goods" and have "represented to the public that [he] sponsors, endorses, approves and/or certifies each of the products, merchandise and goods bearing his image" as proscribed by Tenn.Code Ann. § 47–18–104(b)(2) and (5). In support of his TCPA claim, Mr. Wells alleges that he has suffered an ascertainable loss of "compensation for the repeated use of his image and likeness without his consent" which, in turn, involves the rights to reproduce and create derivative works, such as MoonPie and RC Cola merchandise, from the photograph.

The facts presented do not demonstrate that anyone could be confused about Mr. Wells's sponsorship or endorsement of MoonPie and RC Cola because, as the trial court found, "until [he] filed this lawsuit, no one knew that he was the boy appearing in the Photograph." We conclude that Mr. Wells's TCPA claim, like his TPRPA claim, meets the subject matter and equivalency requirements set forth in section 301 of the Copyright Act and that, therefore, it is preempted.

### C. Unjust Enrichment

■■■ Mr. Wells alleges that CBI and DPSU "have reaped a substantial benefit and profit from the unabated use of [his] picture, image and likeness" and that "[i]t is inequitable for [them] to obtain the benefit of or use of [his] picture, likeness and image without payment to [him]." On appeal, Mr. Wells clarifies that "[his] unjust enrichment claim is akin to a claim of an implied or quasi-contract." The Sixth Circuit has explained that:

For the purpose of the preemption analysis, there is a crucial difference between a claim based on quasi-contract, *i.e.*, a contract implied in law, and a claim based upon a contract implied in fact. In the former, the action depends on nothing more than the unauthorized use of the work. Thus, an action based on a contract implied in law requires no extra element in addition to an act of reproduction, performance, distribution or display, whereas an action based on a contract implied in fact requires the extra element of a promise to pay [10] for the use of the work which is implied from the conduct of the parties.

*Wrench LLC*, 256 F.3d at 459 (emphasis omitted).

As presented, we find no distinction between the rights Mr. Wells asserts by alleging unjust enrichment and the exclusive rights granted under the Copyright Act because his claim for unjust enrichment depends solely on CBI and DPSU's purported failure to compensate him for the allegedly unauthorized reproduction of the photograph.[11] Because that claim meets the subject matter and equivalency requirements of the preemption analysis, we hold that it is preempted.

### D. Accounting

■■■ In support of his accounting claim, Mr. Wells alleges that CBI and DPSU "repeatedly used [his] likeness, image and/or picture in association with the marketing and sale of promotional materials to the public including blankets [and] bottleneck ringers ..." without his written con-

---

10. Mr. Wells does not allege a promise to pay on the part of CBI or DPSU.

11. *See also* 6 William F. Patry, *Patry on Copyright* § 18:28 (2013) (noting that many courts have found preempted implied contract claims because they do not attempt to regulate anything other than the defendant's use of the work in question, and thus are equivalent to the rights granted in section 106 of the Copyright Act).

sent and have "profited substantially" from doing so. He seeks to compel CBI and DPSU to provide "a detailed accounting of any and all profits, revenues, and consideration that is in any way relate[d] to its [sic] unauthorized use of the likeness, image and/or picture of Mr. Wells relative to the use of [the promotional materials]." In essence, Mr. Wells seeks the allegedly substantial profits that CBI and DPSU have earned by selling the promotional materials that contain the copyrightable photo. Mr. Wells seems to ignore the fact that no written contract ever existed.[12] Instead, Mr. Wells's mother orally consented to his modeling in the photograph and he received adequate consideration in exchange. Based on the facts presented, we conclude that the accounting claim sounds in copyright law and is, therefore, preempted.

### E. Conversion

 Conversion is the wrongful appropriation of another's tangible property; an action for the conversion of intangible personal property is not recognized in Tennessee. *Ralph v. Pipkin*, 183 S.W.3d 362, 368 (Tenn.Ct.App.2005). Nevertheless, Mr. Wells alleges that "[CBI and DPSU] have converted the likeness, image and/or picture of [him] to their own use, thereby injuring [him]" and "are liable to [him] for this conversion in compensatory

and punitive damages." Mr. Wells makes clear that he asserts "conversion of his Likeness, an intangible property right" and not conversion of any tangible object allegedly embodying his likeness. Because the claim centers on intangible rights in the photograph and seeks monetary damages for CBI and DPSU's use of the photograph on various objects (as opposed to an allegedly unlawful retention of the photograph or objects themselves), it is preempted. Both the subject matter and the equivalency requirements are satisfied as to Mr. Wells's claim for conversion.

### CONCLUSION

Once distilled, all of the state law claims that Mr. Wells asserts in his complaint are predicated on rights derived from the Copyright Act. Therefore, we affirm the trial court's dismissal of all of the causes of action set forth in the complaint.

Costs of appeal are assessed against the appellant, Bradley Wells, and execution may issue if necessary.

---

12. This case is similar to *Brainard v. Vassar*, 561 F.Supp.2d 922 (M.D.Tenn.2008), where there was no written contract and the plaintiffs' state law claims stemmed from the defendants' alleged use and copying of the plaintiffs' musical work. *Id.* at 928. In support of their claim for an accounting, the plaintiffs in *Brainard*, like Mr. Wells, alleged that the defendants profited from the marketing and sale of the underlying work. *Id.* at 933. The court concluded that "[t]hese allegations d[id] not go beyond the acts of reproduction, performance, distribution, or display that are subject to the Copyright Act" and held that the plaintiffs' claim for accounting was preempted. *Id.*