IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 27, 2017 Session

## NELSON E. BOWERS, II v. ESTATE OF KATHERINE N. MOUNGER

**Appeal from the Circuit Court for Roane County**
**No. 13-CV-76     Michael S. Pemberton, Judge**

_____

**No. E2016-01724-COA-R3-CV**

_____

The plaintiff initiated this action, claiming, *inter alia*, a breach of contract. The plaintiff alleged that he was bringing the action as the assignee of a limited liability company, which was an original party to the contract at issue. The trial court granted summary judgment in favor of the defendant estate, also an original party to the contract at issue, determining that the plaintiff lacked standing to file the action. The plaintiff timely appealed. Determining that the plaintiff possessed standing, we reverse the trial court's grant of summary judgment. We affirm the trial court's decision to allow the estate to amend its responses to the requests for admission propounded by the plaintiff.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and W. NEAL MCBRAYER, JJ., joined.

John P. Konvalinka and John R. Anderson, Chattanooga, Tennessee, for the appellant, Nelson E. Bowers, II.

Daryl R. Fansler, Margo J. Maxwell, and Archie R. Carpenter, Knoxville, Tennessee, for the appellee, Estate of Katherine N. Mounger.

## OPINION

### I. Factual and Procedural Background

This dispute involves an agreement for the purchase and sale of real property. The facts surrounding execution of the agreement are essentially undisputed. McKenzie

Loudon Properties, LLC ("MLP"), was formed as a Tennessee limited liability company on April 27, 2007, by co-founders Steve A. McKenzie and Greg Steele. On May 9, 2007, MLP entered into a Purchase and Sale Agreement ("the Agreement") to pay a total purchase price of $15,200,000 for 1,240 acres located in Roane County, Tennessee ("the Property"). The seller was the Estate of Katherine M. Mounger ("the Estate"). The Agreement was executed by MLP's Chief Member, Mr. McKenzie, and the Estate's co-executors, E. Jay Mounger and Katherine Mounger Lasater (collectively, "Co-Executors"). The plaintiff in this action, Nelson E. Bowers, II, did not own an interest in MLP until he obtained an assignment of interest from Mr. Steele on March 27, 2013. Mr. Bowers's original complaint, however, is based on a sequence of events related to the Agreement that occurred before he obtained his interest in MLP.

The Agreement provides in pertinent part:

Buyer shall have all reasonable access necessary during the Due Diligence Period to conduct all reviews of the Property Buyer deems necessary. Buyer shall have the option prior to the expiration of the Due Diligence Period to terminate this Agreement and all obligations of Buyer hereunder. Whether Buyer exercises such right of termination or not, Buyer shall furnish Seller with copies of all Due Diligence materials without representation or warranty. Except as set forth below in this paragraph, the Earnest Money shall be non-refundable to Buyer. The Buyer shall proceed forthwith within thirty (30) days of the date hereof to cause the title to the Property to be examined by an attorney or title insurance company selected by Buyer and to obtain a title insurance commitment at Buyer's sole expense. In the event that such examination shall disclose any exception to the title to the Property other than the Permitted Exceptions, Buyer shall notify the Seller thereof in writing within ten (10) days of receipt of a title report or title commitment. The Seller shall have thirty (30) days after written notice within which to (a) make said title marketable or to cure or correct any defects in title or to remove any encumbrance that cannot be removed by payment of money out of the purchase price to be paid on Closing of this Agreement; or (b) Seller may advise Buyer that Seller does not intend to cure said defect, in which later event Buyer may cancel this Agreement only within 5 days of receipt of Seller's notice and receive an immediate return of the Earnest Money. Failure to terminate this Agreement as foresaid shall constitute acceptance by Buyer of such defect. Marketable title as used herein shall mean title which a title insurance company licensed in the State of Tennessee will insure at its regular rates, subject only to standard exceptions and matters specified herein. The failure of the Buyer to notify Seller of any title defect

2

within ten (10) days of Buyer's receipt of a written title examination or title commitment showing such exception will constitute Buyer's acceptance of any such exception. Buyer shall furnish Seller with a copy of Buyer's title insurance commitment and any new survey promptly upon receipt of same. **The Seller shall have the right to extend the date of Closing for a reasonable period of time not to exceed thirty (30) days to make the title marketable.**

(Emphasis in original.)

In furtherance of the contract, MLP paid $100,000 in earnest money to the Estate upon the Agreement's execution on May 9, 2007. MLP subsequently tendered a check for $50,000 to the Estate on September 5, 2007, in order to extend the "Due Diligence Period" provided by the Agreement for an additional thirty days. The Estate negotiated both of these checks, which were deposited into the Estate's account. Although it is undisputed that a closing on the sale did not occur, the parties hereto disagree regarding the reason for this failure. Charles Mounger, Co-Executors' brother, recorded deeds to a portion of the Property on November 8, 2007. According to an affidavit executed by attorney Archie R. Carpenter, who had represented the Estate since 2007 (and is co-counsel on appeal), MLP negotiated directly with Charles Mounger and, through counsel, MLP "expressed a desire to close on the sale of the Property within ten (10) days after the title dispute with Charles Mounger was resolved." The dispute with Charles Mounger ultimately was resolved via litigation filed by the Co-Executors, *see Mounger v. Mounger*, No. E2010-02168-COA-R3-CV, 2012 WL 764913, at * 1 (Tenn. Ct. App. Mar. 12, 2012), and Mr. Carpenter asserted in his affidavit that he conveyed three offers to close on the property to MLP in July and August 2008, following entry of a final judgment in that litigation. Regardless, Mr. Bowers asserted via motion for summary judgment that the Estate did not provide clear title to the property within the terms of the Agreement.

As to the procedure set forth in the Agreement for MLP to recover its earnest money, the Estate claims that MLP did not notify the Estate of any claimed defect regarding title to the Property until October 31, 2007. The Estate also maintains that MLP did not provide the Estate with a copy of a title insurance commitment or a copy of the survey required by the Agreement. For its part, MLP was administratively dissolved and became inactive on August 22, 2008, as demonstrated by a copy of MLP's Certificate of Existence from the Tennessee Secretary of State, dated March 6, 2015. In the March 27, 2013 assignment of interest, however, Mr. Steele "transfer[red] and assign[ed] his entire Membership Interest and any and all interest he [had] in [MLP], its assets, rights and otherwise to [Mr.] Bowers." In the assignment of interest, Mr. Steele noted that Mr.

3

McKenzie had filed for bankruptcy on or about December 20, 2008.[1]  The record does not reflect what ultimately became of Mr. McKenzie's interest in MLP, but there is no dispute that Mr. Bowers became the sole member of MLP.

On May 3, 2013, Mr. Bowers filed a complaint, solely in his own name, against the Estate and Co-Executors (collectively, "Defendants"), alleging breach of contract for failure to perform under the Agreement while also asserting theories of unjust enrichment and quantum meruit.  Mr. Bowers sought actual damages of $150,000 for the earnest money paid by MLP, as well as interest, costs, expenses, and attorney's fees.  Defendants filed an answer on May 24, 2013, admitting the existence of the Agreement but denying any liability to Mr. Bowers and disputing the trial court's jurisdiction.  Mr. Bowers subsequently filed a motion for summary judgment, attaching, *inter alia*, his assignment of interest in MLP from Mr. Steele.

On December 28, 2014, Defendants filed a "Motion to Amend Defendants' Responses to Plaintiff's First Set of Admissions," requesting that the trial court allow Defendants to correct a "clerical error" in which they had admitted to statement number ten in Mr. Bowers's first set of admissions, namely that on October 8, 2007, the Estate could not convey marketable title to the Property to MLP.  Defendants requested to change their response to reflect that "the first date the Estate could not have conveyed marketable title to the property to MLP was after November 8, 2007," the date that Charles Mounger recorded deeds to the Property.  Following a hearing conducted on January 5, 2015, the trial court entered an order on January 30, 2015, allowing Defendants to amend their response.  The court stated in its order in relevant part:

> The proposed amendments to the requests for admission, although brief, are not minor.  The change in the wording of the answers to the requests for admission is material and goes to the heart of the plaintiff's summary judgment motion.  The defendants assert that the amendment is necessary to correct a typographical or clerical error.  The plaintiff argues, among other things that the defendants have had eight (8) months to seek to amend their answers but did not do so until shortly before the date scheduled for the summary judgment hearing.  Although the time period before discovery of the typographical error was quite long regardless of which time period is used, the court does note that it had been four (4)

---

[1] Pursuant to the Tennessee Revised Limited Liability Company Act, a member's membership interest terminates when a member, such as Mr. McKenzie herein, files a petition as a debtor in bankruptcy. *See* Tenn. Code Ann. § 48-249-503(a)(7)(A) (2012).  The LLC, however, may continue with the terminated member having no governance rights while retaining pre-termination financial rights. *See* Tenn. Code Ann. § 48-249-505(a)(1) (2012).

4

months since the summary judgment motion was filed and the answers to the request for admissions were raised as a basis for the motion.

\* \* \*

Tenn. R. Civ. P. 36.02 clearly provides the trial court discretion to allow amendment of previously filed, and admitted, requests to admit. *Meyer Laminates (SE), Inc. v. Primavera Distributing, Inc.*, 293 S.W.3d 162 (Tenn. [Ct. App.] 2008). In the exercise of that discretion, the court will permit the defendants to amend their answers.

Mr. Bowers filed a supplement to his motion for summary judgment on February 23, 2015. Defendants subsequently filed a competing motion for summary judgment on March 11, 2015, asserting that (1) Mr. Bowers was not a real party in interest and did not have standing to pursue the action because only MLP was a party to the Agreement, (2) Co-Executors were parties to the action only in their representative capacity and should be dismissed in their respective individual capacities, (3) the gravamen of the complaint sounded in conversion and should be barred pursuant to the three-year statute of limitations provided in Tennessee Code Annotated § 28-3-105 (2000), and (4) MLP did not validly terminate the Agreement so as to entitle it to recover the earnest money.

On August 31, 2015, Mr. Bowers filed an amended complaint, naming only the Estate as the defendant and not Co-Executors. Mr. Bowers did not seek to add MLP as a plaintiff. Rather, Mr. Bowers stated: "MLP, by and through its member, has assigned all of its corporate assets and interests to the Plaintiff." On October 16, 2015, Mr. Bowers filed a "Second Supplement to the Motion for Summary Judgment." Mr. Bowers attached to this supplement an assignment executed by him on April 27, 2015, stating in full:

The undersigned, as the owner of and successor to one hundred percent (100%) of all of the membership interest in McKenzie Loudon Properties, LLC ("MLP"), a Tennessee limited liability company, hereby transfers and assigns to Nelson E. Bowers, II any and all of MLP's right and interest to receive any and all monies and assets recovered and/or collected on of MLP of any rights that MLP may have.

The trial court conducted a hearing on the competing motions for summary judgment on May 31, 2016. The court directed the parties to present arguments on the threshold issues of standing and subject matter jurisdiction. Following the hearing, the trial court found that Mr. Bowers did not have standing to maintain this action and that the court therefore did not possess subject matter jurisdiction. The court entered a final

judgment dismissing Mr. Bowers's complaint with prejudice and incorporating its memorandum opinion on July 8, 2016. Mr. Bowers timely appealed.

## II. Issues Presented

Mr. Bowers presents five issues, the first four of which are all related to the overarching issue of standing:

1.    Whether the trial court erred by granting summary judgment in favor of the Estate upon finding that Mr. Bowers lacked standing.

     A.    Whether the trial court erred by considering the issue of standing based upon Mr. Bowers's status at the time of filing his initial complaint rather than at the time of filing his amended complaint.

     B.    Whether the trial court erred by finding that Mr. Bowers lacked standing when he purported to be the real party in interest.

     C.    Whether the trial court erred by finding that Mr. Bowers lacked standing pursuant to the provisions of the Tennessee Revised Limited Liability Company Act. *See* Tenn. Code Ann. §§ 48-249-101, *et seq.*

     D.    Whether the trial court erred by finding that Mr. Bowers lacked standing to maintain a claim for unjust enrichment.

2.    Whether the trial court erred by granting the Estate's motion seeking to amend its responses to Mr. Bowers's requests for admission.

In the event that this Court determines that the trial court's ruling should be reversed, the Estate raises the following additional issues:

3.    Whether the trial court erred by declining to find that Mr. Bowers's action was barred by the three-year statute of limitations concerning a claim of conversion pursuant to Tennessee Code Annotated § 28-3-105.

4.    Whether the trial court erred by declining to find that MLP's failure to terminate the Agreement extinguished Mr. Bowers's right to

6

recover the subject earnest money pursuant to Section 4(g) of the Agreement.

## III.  Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness.  *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)).  As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied."  *Rye*, 477 S.W.3d at 250.  As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.  We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis.  Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial."  Tenn. R. Civ. P. 56.03.  "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record."  *Id.*  When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial."  Tenn. R. Civ. P. 56.06.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.,* 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)].  The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of

the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65 (emphasis in original). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

## IV. Standing

The trial court's grant of summary judgment in favor of the Estate was predicated solely upon Mr. Bowers's lack of standing and the court's resultant determination that it lacked subject matter jurisdiction. Mr. Bowers contends that this ruling was in error because (1) the trial court improperly relied upon the facts as pled in Mr. Bowers's initial complaint rather than his amended complaint; (2) the court determined that MLP, rather than Mr. Bowers, was the real party in interest; (3) the court erroneously construed provisions of the Tennessee Revised Limited Liability Company Act; and (4) the court failed to consider Mr. Bowers's claim for unjust enrichment. We will address each of these arguments in turn.

### A. Initial Complaint Versus Amended Complaint

Mr. Bowers argues that the trial court erred by relying solely on the facts as pled in his initial complaint when making its determination regarding standing. Although the court did not expressly state whether it had considered the allegations of the amended complaint in analyzing the standing issue, the court's final judgment recites: "The Court first considered the issue of Plaintiff's standing to file this action when it was commenced . . . " (emphasis added). Moreover, the court's incorporated memorandum opinion discusses the assignment from Mr. Steele to Mr. Bowers while omitting any analysis of the subsequent assignment by MLP to Mr. Bowers, which was referenced in the amended complaint. In addition, the court made further reference to the Agreement as it existed

8

"[a]t the time the suit was filed . . . ." Therefore, the court's judgment and memorandum opinion imply that the court declined to consider the facts as pled in the amended complaint when making its determination regarding standing. The Estate does not dispute that the trial court only considered the initial complaint, asserting instead that the trial court acted properly in doing so.

The issue at hand necessarily involves an analysis of the doctrine of standing. As our Supreme Court previously has recognized:

> Courts employ the doctrine of standing to determine whether a particular litigant is entitled to have a court decide the merits of a dispute or of particular issues. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975); *Knierim v. Leatherwood,* 542 S.W.2d 806, 808 (Tenn. 1976) (holding that courts use the standing doctrine to decide whether a particular plaintiff is "properly situated to prosecute the action."); *City of Brentwood v. Metropolitan Bd. of Zoning Appeals, et al.,* 149 S.W.3d 49, 55 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. Sept. 13, 2004). Grounded upon "concern about the proper—and properly limited—role of the courts in a democratic society," *Warth,* 422 U.S. at 498, the doctrine of standing precludes courts from adjudicating "an action at the instance of one whose rights have not been invaded or infringed." *Mayhew v. Wilder,* 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001), *perm. app. denied* (Tenn. April 30, 2001). The doctrine of standing restricts "[t]he exercise of judicial power, which can so profoundly affect the lives, liberty, and property of those to whom it extends, . . . to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.* 454 U.S. 464, 473, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982). Without limitations such as standing and other closely related doctrines "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Warth,* 422 U.S. at 500; *see also DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, [333], 126 S. Ct. 1854, 1856, 164 L. Ed. 2d 589 (2006) (explaining that standing enforces the constitutional case-or-controversy requirement that is "crucial in maintaining the 'tripartite allocation of power' set forth in the Constitution").

> To establish standing, a plaintiff must show three "indispensable" elements "by the same degree of evidence" as other matters on which the

plaintiff bears the burden of proof. *Petty v. Daimler/Chrysler Corp.,* 91 S.W.3d 765, 767 (Tenn. Ct. App. 2002), *perm. app. denied* (Tenn. Sept. 9, 2002). First, a plaintiff must show a distinct and palpable injury: conjectural or hypothetical injuries are not sufficient. *City of Brentwood,* 149 S.W.3d at 55-56; *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Standing also may not be predicated upon an injury to an interest that the plaintiff shares in common with all other citizens. *Mayhew,* 46 S.W.3d at 767. Were such injuries sufficient to confer standing, the State would be required to defend against "a profusion of lawsuits" from taxpayers, and a purpose of the standing doctrine would be frustrated. *See Parks v. Alexander,* 608 S.W.2d 881, 885 (Tenn. Ct. App. 1980) (stating that one purpose of standing is to protect the State from a "profusion of lawsuits").

The second essential element of standing is a causal connection between the claimed injury and the challenged conduct. *Mayhew,* 46 S.W.3d at 767. A plaintiff may satisfy this element by establishing the existence of a "fairly traceable" connection between the alleged injury in fact and the defendant's challenged conduct. *DaimlerChrysler Corp.,* 547 U.S. at [333], 126 S. Ct. at 1861. The third and final element necessary to establish standing is a showing that the alleged injury is capable of being redressed by a favorable decision of the court. *Petty,* 91 S.W.3d at 767; *DaimlerChrysler Corp.,* 547 U.S. at [333], 126 S. Ct. at 1861.

It is important to note that standing does not depend upon a plaintiff's likelihood of success on the merits; however, the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted. *City of Brentwood,* 149 S.W.3d at 56. Specifically, courts should inquire:

> Is the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable? Is the line of causation between the illegal conduct and injury too attenuated? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative?

*Allen v. Wright,* 468 U.S. 737, 752, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984).

10

*Am. Civil Liberties Union of Tenn. v. Darnell*, 195 S.W.3d 612, 619-21 (Tenn. 2006) (footnote omitted).

The Estate argues that the trial court properly considered only the factual allegations contained in the original complaint when determining whether Mr. Bowers had standing. In so arguing, the Estate primarily relies upon federal court cases establishing a "time-of-filing rule" concerning standing to bring an action in federal court based on diversity jurisdiction. *See, e.g., Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004) (explaining that the time-of-filing rule "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing . . . ."). As other federal courts have recognized, however, this rule "operates exclusively in the realm of diversity jurisdiction." *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 92 (1st Cir. 2008) (explaining that the "letter and spirit of the [time-of-filing] rule apply most obviously in diversity cases, where the rule originated").[2] Moreover, the Estate conflates the concepts of standing and subject matter jurisdiction despite our Supreme Court's prior explanation that subject matter jurisdiction is only implicated when "a statute creates a cause of action and designates who may bring an action" such that "the issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite." *See In re Estate of Smallman*, 398 S.W.3d 134, 149 (Tenn. 2013) (quoting *Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004)). In this action, Mr. Bowers's claims of breach of contract, quantum meruit, and unjust enrichment were based on the common law rather than "a statute [that] creates a cause of action and designates who may bring an action." *Id.*; *see generally Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 903 (Tenn. 1999) (breach of contract); *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 153 (Tenn. 1966) (quantum meruit); *Wells v. Chattanooga Bakery, Inc.*, 448 S.W.3d 381, 386 (Tenn. Ct. App. 2014) (unjust enrichment).

Even if a question of subject matter jurisdiction were implicated, however, when the original complaint is subsequently amended, as was accomplished in the case at bar, such amended complaint becomes the operative pleading, which the court must review for jurisdictional purposes. Federal precedent elucidates that when an amended complaint is filed pursuant to Federal Rule of Civil Procedure 15, the federal courts look to the factual allegations contained in the amended complaint in order to make a determination regarding standing and have allowed jurisdictional defects to be cured by a supplemental pleading. *See, e.g., Rockwell Int'l Corp. v. United States*, 549 U.S. 457,

---

[2] *But see Utah Ass'n of Ctys. v. Bush*, 455 F.3d 1094, 1101 (10th Cir. 2006) (applying the time-of-filing rule in a non-diversity case when no injury occurred until after the filing of the complaint and amended complaint).

473-74 (2007) (holding that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."); *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1047 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Apr. 28, 2015), *cert. denied,* 136 S. Ct. 240 (2015) ("[T]he present case involves the filing of a supplemental pleading that became the operative pleading in the case on which subject-matter jurisdiction must be based.").

In *Northstar*, the plaintiff was an investment firm, which instituted a class action on behalf of investors against an investment trust and its trustees, alleging, *inter alia*, breach of fiduciary duty and breach of contract. *Northstar Fin. Advisors Inc*., 779 F.3d at 1036. Northstar owned no shares of the fund at issue at the time of filing of the original complaint. *Id*. at 1043. Following the release of an opinion by the Ninth Circuit Court of Appeals in a similarly situated case, wherein the appellate court held that the plaintiff needed to hold a proprietary interest in the claim in order to have standing, Northstar obtained an assignment of claim from a client-shareholder. *Id.*

The *Northstar* defendants filed a motion to dismiss, asserting that Northstar maintained no standing at the time the original complaint was filed. *Id*. In dismissing the complaint, the district court suggested that the lack of standing could be cured by the filing of an amended complaint. *Id*. Northstar subsequently filed an amended complaint, and the district court allowed the supplemental pleading pursuant to Federal Rule of Civil Procedure 15. *Id*. at 1044. The Ninth Circuit Court of Appeals agreed that the lack of standing could be cured by the filing of a supplemental pleading following execution of an assignment providing Northstar with a proprietary interest. *Id*. The *Northstar* Court thus determined the time-of-filing rule to be inapplicable when a supplemental pleading had been filed pursuant to Rule 15. *Id*. at 1048.

Although the *Northstar* case is not binding precedent, "[f]ederal case law interpreting rules similar to our own are persuasive authority for purposes of construing the Tennessee rule." *Harris v. Chern*, 33 S.W.3d 741, 745 n.2 (Tenn. 2000). In the case at bar, it is undisputed that Mr. Bowers filed an amended complaint following his execution of an assignment as the sole member of MLP, wherein he assigned to himself MLP's rights "to receive any and all monies and assets recovered and/or collected" on MLP's behalf. Tennessee Rule of Civil Procedure 15.04, similar to Federal Rule of Civil Procedure 15(d), governs such amendments to the pleadings, providing that a party may supplement to "set[] forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." As such, in cases wherein the initial complaint has been properly amended by the plaintiff(s), this Court has looked to the factual allegations of the amended complaint when making a determination regarding standing. *See, e.g., In re Estate of Bostic*, No. E2016-00553-COA-R3-CV, 2016 WL

7105213, at *3 (Tenn. Ct. App. Dec. 6, 2016); *Howe v. Haslam*, No. M2013-01790-COA-R3-CV, 2014 WL 5698877, at *17 (Tenn. Ct. App. Nov. 4, 2014). Based on the above precedent, we conclude that the trial court erred in failing to consider the factual allegations of the amended complaint, which was the operative pleading, when making its determination regarding Mr. Bowers's standing.

We also determine the Estate's reliance upon *LaFollette Med. Ctr. v. City of LaFollette*, 115 S.W.3d 500, 504 (Tenn. Ct. App. 2003) and *Whalum v. Shelby Cty. Election Comm'n*, No. W2013-02076-COA-R3-CV, 2014 WL 4919601, at *11 (Tenn. Ct. App. Sept. 30, 2014), to be misplaced. In those cases, the plaintiffs had standing at the time of filing the original complaint, but subsequent changes in circumstance raised questions concerning whether such standing continued to exist. *LaFollette Med. Ctr.*, 115 S.W.3d at 504; *Whalum*, 2014 WL 4919601, at *11. In both cases, this Court looked only to the facts as they existed at the time of the original complaint's filing in order to determine whether standing existed. *LaFollette Med. Ctr.*, 115 S.W.3d at 504; *Whalum*, 2014 WL 4919601, at *11. However, no amended complaint was ever filed in either case, such that the original complaint remained the operative pleading. In the case at bar, the operative pleading was the amended complaint, through which Mr. Bowers alleged that he personally maintained the right to collect any monies owed to MLP based on the April 27, 2015 assignment. The trial court erred in failing to consider this amended complaint when making a determination regarding Mr. Bowers's standing.

### B. Tennessee Revised Limited Liability Company Act

The trial court also determined that Mr. Bowers lacked standing based on certain provisions contained in the Tennessee Revised Limited Liability Company Act ("the Act"), codified at Tennessee Code Annotated §§ 48-249-101, *et seq.* (2012). The court specifically noted that, pursuant to Tennessee Code Annotated § 48-249-116 (2012), an LLC is a legal entity distinct from its members and, pursuant to Tennessee Code Annotated § 48-249-502 (2012), a member has no interest in specific LLC property. The court also noted that pursuant to Tennessee Code Annotated § 48-249-114(c) (2012), an LLC member is not a proper party to a proceeding by or against an LLC, except in limited circumstances not applicable here. The court thus concluded:

> But the complaint essentially seeks to recover the amount of the earnest money paid by the LLC to the Moungers in addition to attorneys' fees and interest and so on and so forth. The assignment between Mr. Steele and Mr. Bowers only assigned and could only assign his membership interest. It did not and could not assign the property of the LLC, at least the way I read the statute.

13

At the time the suit was filed, the asset, to me, was the agreement or the escrow money was the property of the LLC and not Mr. Bowers. A member of the LLC, as I said, the statute says it is not a proper party to bring this type of suit.[3]

Mr. Bowers contends that the Act nonetheless provides that assets of the LLC can be distributed to its members upon dissolution and "winding up." We agree. Our review of the Act's provisions reveals that when, as here, an LLC is administratively dissolved by the Secretary of State, the LLC "shall be wound up, and its existence shall be terminated as provided in this part." *See* Tenn. Code Ann. § 48-249-602(a)(6), (c) (2012). The Act further provides that when an LLC is administratively dissolved, the LLC "continues its existence, but may not carry on any business except that necessary to wind up and liquidate its business and affairs . . . ." *See* Tenn. Code Ann. § 48-249-605(c) (2012).

The Act specifies that if the LLC is to be wound up other than by merger, the members shall (1) collect "all known debts due or owing to the LLC"; (2) pay all known obligations of the LLC; and (3) "sell, lease, transfer or otherwise dispose of all . . . of the property and assets of a dissolved LLC." *See* Tenn. Code Ann. § 48-249-610(b)-(d) (2012). Following the payment of any debts, all tangible and intangible property of the LLC "shall be distributed to the members and holders of financial rights . . . ." *See* Tenn. Code Ann. § 48-249-610(e). If the LLC wishes to terminate its existence, it must deliver articles of termination to the Secretary of State for filing. *See* Tenn. Code Ann. § 48-249-608(a) (2012). Only upon the filing of such articles of termination does the LLC cease to exist. *See* Tenn. Code Ann. § 48-249-608(a)(2).[4]

Based upon the express language contained in these provisions, we conclude that the trial court erred in determining that the Act prohibited assignment of the LLC's property. It was undisputed that Mr. Bowers was the sole member of MLP. Mr. Bowers, acting as the sole member of MLP, assigned MLP's rights "to receive any and all monies and assets recovered and/or collected" on MLP's behalf to himself. Such action is expressly permitted by Tennessee Code Annotated § 48-249-610 (d)-(e) as part of the winding-up process. Because the Act does not prohibit the sole member of an LLC from

---

[3] No allegation has been raised that the organizational documents of MLP would prohibit Mr. Bowers, as sole member of MLP, from assigning MLP's property to himself, and those documents are not in the record before us.

[4] In addition to the above provisions regarding dissolution, the Act also provides that by approval of a "majority vote of the members," the LLC may transfer "its property and assets not in the usual and regular course of business . . . ." *See* Tenn. Code Ann. § 48-249-705 (2012).

assigning LLC property to himself, we determine that the trial court erred in finding that the Act did prohibit such a transaction.

Having determined that the trial court erred in (1) failing to consider the factual allegations of the amended complaint when ruling on the issue of standing and (2) concluding that Mr. Bowers could not assign MLP's property to himself as the sole member of MLP, we reverse the trial court's grant of summary judgment in favor of the Estate on the basis of lack of standing. Mr. Bowers, as assignee of MLP's rights pursuant to the Agreement, demonstrated both an alleged "distinct and palpable injury" and a "causal connection between the claimed injury and the challenged conduct" of the Estate. *See Am. Civil Liberties Union of Tenn.*, 195 S.W.3d at 619-21. Furthermore, Mr. Bowers's alleged injury is capable of being rectified by a favorable decision from the courts. *Id.* Therefore, we conclude that Mr. Bowers possessed the requisite standing to bring his claims against the Estate. Mr. Bowers's remaining issues raised regarding standing are pretermitted as moot.

## V. Amendment of Responses to Requests for Admission

Mr. Bowers also argues that the trial court erred in granting the Estate's motion to amend its responses to the requests for admission propounded by Mr. Bowers. In their original responses to Mr. Bowers's first set of requests for admission, the Estate admitted that it could not convey marketable title of the Property to MLP on October 8, 2007. Mr. Bowers relied on this admission in his initial motion for summary judgment. On December 28, 2014, the Estate moved to amend its responses, stating that a clerical error had been made such that the above-described response inaccurately admitted a statement that should have been denied. The Estate explained that there was no cloud on the title until November 8, 2007, when Charles Mounger recorded his deeds. The Estate's attorney filed an affidavit, professing that an error in drafting the initial response had occurred.

The trial court granted the Estate's motion to amend its responses, stating in pertinent part:

> Tenn. R. Civ. P. 36.02 clearly provides the trial court discretion to allow amendment of previously filed, and admitted, requests to admit. *Meyer Laminates (SE), Inc. v. Primavera Distributing, Inc.*, 293 S.W.3d 162 (Tenn. [Ct. App.] 2008). In the exercise of that discretion, the court will permit the defendants to amend their answers.

Mr. Bowers contends that the trial court improperly granted the Estate's motion to amend because Mr. Bowers was prejudiced thereby.

15

As this Court has previously explained with respect to a motion seeking to amend a party's responses pursuant to Tennessee Rule of Civil Procedure 36.02:

> Trial courts are granted broad discretion over procedural matters. *Douglas v. Estate of Robinson,* 876 S.W.2d 95, 97 (Tenn. 1994). Appellate courts review decisions regarding procedural matters using the deferential "abuse of discretion" standard of review. "An appellate court will not reverse a discretionary judgment of the trial court unless it affirmatively appears that such discretion has been explicitly abused to great injustice and injury of the party complaining." *Id.* (citing Tenn. R. App. P. 36(b); *Bruce v. Bruce,* 801 S.W.2d 102, 107 (Tenn. Ct. App. 1990)). For issues of law, the standard of review is *de novo,* with no presumption of correctness. *Lavin v. Jordon,* 16 S.W.3d 362, 364 (Tenn. 2000).

> * * *

> Tenn. R. Civ. P. 36.02, in pertinent part, provides:

> Any matter admitted under this rule is *conclusively established* unless the court on motion permits withdrawal or amendment of the admission. . . . [T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby *and* the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.
> (emphasis added)

*Hutcheson v. Irving Materials, Inc.*, No. M2002-03064-COA-R3-CV, 2004 WL 419722, at *3 (Tenn. Ct. App. Mar. 8, 2004). *See Meyer Laminates (SE), Inc. v. Primavera Distrib., Inc.*, 293 S.W.3d 162, 167 (Tenn. Ct. App. 2008) ("The discretion afforded the trial court by Rule 36.02 to permit withdrawal or amendment of matters deemed admitted provides a modicum of flexibility to avoid any potential injustice that might occur . . . ."); *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010) ("A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.").

Mr. Bowers asserts that the trial court should not have allowed the Estate to amend its responses because amendment of the responses resulted in the denial of Mr. Bowers's

summary judgment motion. Mr. Bowers thereby argues that his litigation costs were increased by the trial court's decision. As such, Mr. Bowers contends that the trial court failed to consider the second prong of the test regarding prejudice to the party opposing the motion to amend. We note, however, that the second prong actually requires a showing that "withdrawal or amendment will prejudice [the opposing] party in maintaining the action or defense on the merits." *See* Tenn. R. Civ. P. 36.02 (emphasis added). In this case, Mr. Bowers has not shown that he was prejudiced in maintaining his action on the merits by the trial court's decision to allow the amendment. We therefore determine that the trial court did not abuse its discretion in allowing the Estate to amend its responses.

## VI. Breach of Contract versus Conversion

Having determined that the trial court erred in ruling that Mr. Bowers did not possess standing, we must now address the Estate's issues presented. The Estate contends that Mr. Bowers's claim sounds in the tort of conversion rather than breach of contract because Mr. Bowers is seeking return of earnest money that he alleges was wrongfully withheld by the Estate. "Conversion is the appropriation of another's property to one's own use and benefit, by the exercise of dominion over the property, in defiance of the owner's right to the property." *Ralston v. Hobbs*, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009) ("A cause of action for conversion occurs when the alleged wrongdoer exercises dominion over the funds in 'defiance of the owner's rights.'") (quoting *Hanna v. Sheflin*, 275 S.W.3d 423, 427 (Tenn. Ct. App. 2008)). The Estate asserts that a conversion claim is barred by the three-year statute of limitations, as provided by Tennessee Code Annotated § 28-3-105. The Estate bases its argument that Mr. Bowers's claim actually sounds in conversion on the predicate that he was not a party to the Agreement and thus could not assert a claim to recover for a breach of the Agreement. We disagree with the Estate on this issue.

Although Mr. Bowers was not an original party to the Agreement, MLP was. Mr. Bowers is therefore asserting MLP's rights pursuant to the Agreement, which were assigned to Mr. Bowers by the April 27, 2015 assignment. The Agreement expressly provides that it is "binding upon and inure[s] to the benefit of the Parties hereto and their respective heirs, devisees, personal representatives, successors in trust, successors, and assigns." As this Court has explained, "[o]ne of the general principles of the law of assignments is that the assignee 'steps into the shoes of the assignor' with regard to the matters covered by the assignment." *SunTrust Bank, Nashville v. Johnson*, 46 S.W.3d 216, 226 (Tenn. Ct. App. 2000) ("[A]n assignment does not extinguish the underlying contract, but rather it transfers the assignor's contract rights against the other contracting party to the assignee who succeeds to the assignor's rights under the underlying contract.").

We have previously determined that the Act reveals no prohibition against an LLC's assignment of its property to an individual. Likewise, the Agreement contains no such prohibition. Because Mr. Bowers was assigned MLP's rights pursuant to the Agreement, he now stands "in the shoes" of MLP and can properly assert MLP's claim for breach of the Agreement. We therefore determine this issue to be without merit.

## VII. Enforcement of Agreement

Finally, the Estate argues that Mr. Bowers is prevented from recovering in this action because MLP failed to take the required steps pursuant to the Agreement to recover the earnest money paid. Inasmuch as the trial court did not address this issue, however, we conclude that the issue of whether MLP complied with the requirements of the Agreement is not properly before this Court on appeal of the grant of summary judgment. *See Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts[.]"). This issue may be properly addressed by the trial court upon remand.

## VIII. Conclusion

For the foregoing reasons, we reverse the trial court's grant of summary judgment in favor of the Estate on the basis of Mr. Bowers's lack of standing. We affirm the trial court's grant of the Estate's motion to amend its responses to the requests for admission. We remand this matter to the trial court for further proceedings consistent with this Opinion. Costs on appeal are taxed to the appellee, Estate of Katherine N. Mounger.

_____
THOMAS R. FRIERSON, II, JUDGE

18