IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 13, 2021 Session

## TERESA MCCAIN v. SAINT THOMAS MEDICAL PARTNERS

**Appeal from the Circuit Court for Davidson County**
**No. 17C-2280          Joseph P. Binkley, Jr., Judge**
_____

**No. M2020-00880-COA-R3-CV**
_____

Plaintiff employee appeals the trial court's decision to grant summary judgment on her claims under the Tennessee Human Rights Act. We affirm, as modified, the dismissal of the plaintiff's claims.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

R. Patrick Parker and Abigail M. Strader, Hendersonville, Tennessee, for the appellant, Teresa McCain.

C. Eric Stevens and Shana G. Fonnesbeck, Nashville, Tennessee, for the appellee, Saint Thomas Medical Partners.

### OPINION

### I.     PROCEDURAL AND FACTUAL HISTORY

Because this case was decided by summary judgment, we largely take the facts from the parties' statements of undisputed material facts. In 2016, Plaintiff/Appellant Teresa McCain ("Appellant") worked as a Licensed Practical Nurse with Defendant/Appellee Saint Thomas Medical Partners ("Appellee"). According to Appellant, from November 2015 to April 2016, Dr. Stephen May engaged in a pattern of sexual harassment toward Appellant. The alleged sexual harassment consisted of unwanted hugging and touching, as well as one attempt on April 11, 2016, to kiss Appellant. On April 15, 2016, Appellant complained to her nursing supervisor, Diane Cooper, about Dr. May's behavior. According

to Appellant, Dr. May thereafter verbally abused her. On May 2, 2016, Appellant further alleged that Dr. May pressed his backside to her while talking to another physician. Around May 6, 2016 was the last specific date that Appellant alleged that Dr. May touched her.[1]

On June 3, 2016, Ms. Cooper gave Appellant a coaching feedback form related to multiple complaints of rude behavior by Appellant; at least one of the complaints came from an outside vendor. On the same day, Appellant complained to the office manager that Ms. Cooper was trying to "pad [the] record" to get her fired.

Appellant took leave under the Family Medical Leave Act ("FMLA") on June 26, 2016, due to injuries she sustained in an unrelated automobile accident. Appellant did not return to work until she was released by her doctor to return on September 6, 2016. Appellant returned to work on September 6, 2016, to find that she had been reassigned to a different doctor who worked on a different floor. The physician to whom Appellant was reassigned was not at work on September 6, 2016, and Appellant never met him. According to Appellant, her new position was "far less prestigious" because she had been told that the new physician was not yet credentialed and could not see patients.[2] Appellant's prior position, however, was much faster-paced due to the volume of work. The new position, however, was not accompanied by a different title, lower pay, or different benefits. Ms. Cooper informed Appellant about the reassignment and told her to get settled in her new job. However, Appellant was unable to log into the computer so that she could clock in.

---

[1] Appellant disputed Appellee's proffered undisputed fact that the "May 2, 2016 incident is the last day that [Appellant] contends Dr. May touched her in any way." In support, Appellant first cited generally to her deposition as a whole. This is not sufficient to create a dispute of material fact. *See* ***Duncan v. Lloyd***, No. M2004-01054-COA-R3-CV, 2005 WL 1996624, at *5 (Tenn. Ct. App. Aug. 18, 2005) ("Merely informing the trial court that the record demonstrates disputed facts, without specifically addressing those facts in the response and specifically citing to portions of the record evidencing dispute, does not satisfy Rule 56. Any fact not *specifically* disputed *with* citations to the record to support the alleged dispute may be deemed admitted."). Appellant also cited certain portions of her deposition concerning additional harassment; the actual testimony cited is entirely unclear as to the date of the additional physical harassment and therefore does not properly dispute Appellee's purported fact. We note, however, that outside the cited portions of Appellant's deposition, she does indicate that some physical harassment occurred on the Friday following May 2, 2016, or May 6, 2016. As such, we take May 6, 2016 as the final date for unwanted physical touching by Dr. May.

Similar to what occurred with regard to this alleged fact, we note that Appellant often disputed the material facts alleged by Appellee by pointing to evidence that was wholly irrelevant to the facts alleged. For example, when Appellee alleged that Appellant received no change in title, benefits, or pay in her reassigned position, Appellant disputed that fact by pointing to her allegedly different job responsibilities. Unless Appellant pointed to specific facts in the record that dispute the specific assertions made by Appellee, we take the facts as admitted for purposes of this appeal. *See generally* ***Green v. Green***, 293 S.W.3d 493, 513 (Tenn. 2009) (noting that a factual dispute precludes summary judgment only if "a factual dispute actually exists"); ***Duncan***, 2005 WL 1996624, at *5 (detailing the procedure required to demonstrate a genuine dispute of fact).

[2] Ms. Cooper, on the other hand, testified that while the doctor to whom Appellant had been reassigned was new and just starting his practice, he was credentialed.

Ms. Cooper informed Appellant that she would call about it and have it fixed that day. Appellant's personal effects were also removed from her prior work space and allegedly never returned to her.

Appellant thereafter left for lunch after about four hours of work. During her lunch break, Appellant alleges that she suffered from chest pains that were ultimately diagnosed as a panic attack. Appellant's physician ordered that she take another medical leave, with her next return date to be September 12, 2016.

Rather than return to work on September 12, 2016, Appellant instead emailed Appellee to inform them that she was resigning from her position "under duress, due to the hostile environment that [Appellee] has made for me since April, 2016 [sic] & the effects of these actions, which has now effected [sic] my health." Appellant never returned to work after September 6, 2016.

On September 12, 2017, Appellant filed a complaint against Appellee, alleging a violation of the Tennessee Human Rights Act ("THRA"), intentional infliction of emotion distress ("IIED"), negligent infliction of emotional distress ("NIED"), and vicarious liability. With regard to the THRA, Appellant alleged that Appellee's employees or agent made unwelcome sexual advances toward her, which reasonably interfered with her work performance, and that Appellee's failure to prevent, investigate, or remedy the sexual harassment created a hostile work environment. As a result, Appellant alleged that she suffered damages related to physical and mental distress and humiliation, as well as front pay, back pay, and attorney's fees.

Appellee answered the complaint on October 16, 2017.[3] On May 10, 2019, Appellee filed a motion for summary judgment. Therein, Appellee asserted that all of Appellant's claims were barred by the applicable statute of limitations. Appellee further asserted that Appellant could not make out a prima facie case for hostile work environment or retaliation, that her NIED claim was pre-empted by the Worker's Compensation Statute, and that her claims otherwise failed as a matter of law. Appellee filed a statement of undisputed material facts in support of its motion. The parties thereafter apparently agreed to stay discovery to in order to resolve the first two grounds for dismissal cited in the motion: the statute of limitations and the Worker's Compensation Statute. Appellant responded to the motion, arguing that her claims survived due to the application of the continuing violation doctrine, discussed *infra*. Appellant also responded to Appellee's statement of undisputed facts.

The trial court heard the motion for summary judgment as to the first two grounds for dismissal on August 16, 2019. In a detailed written order entered on August 23, 2019, the trial court dismissed Appellant's hostile work environment and retaliation claims

---

[3] Appellee later amended its answer on June 20, 2019.

"arising on or before September 6, 2016" as being barred by the applicable statute of limitations.[4] The trial court specifically found that the continuing violation doctrine did not save Appellant's claims because she failed to provide evidence of a single act of conduct rising to the level of a THRA violation within the limitations period. The trial court also dismissed Appellant's IIED, NIED, and vicarious liability claims. The trial court ruled, however, that Appellee's motion did not address Appellant's claim that she was constructively discharged on September 12, 2016 due to Appellee's conduct on September 6, 2016. As such, the trial court ruled that a single claim remained pending: "whether [Appellant] suffered an actionable constructive discharge on September 12, 2016[,] arising from the events of September 6, 2016, and if so whether [Appellant] is entitled to damages as a result."

On September 25, 2019, Appellee filed a second motion for summary judgment, arguing that the undisputed facts demonstrated that Appellant was not constructively discharged. In support, Appellee filed a second memorandum and statement of undisputed material facts. Appellant opposed the motion and disputed some of the facts contained in Appellee's statement, often arguing that additional discovery was necessary to respond to Appellee's motion. On November 15, 2019, the trial court entered an order ruling that the second motion for summary judgment would be stayed to allow the parties to take the depositions of certain witnesses.

On March 20, 2020, after the depositions had been taken, Appellee renewed its motion for summary judgment. Appellant again opposed the motion and amended her responses to Appellee's second statement of undisputed material facts.

The second motion for summary judgment was heard on May 14, 2020, and granted by order of May 27, 2020. In its order, the trial court ruled that Appellant failed to show a tangible adverse employment action so as to support a claim for constructive discharge. The trial court noted that Appellant was not demoted, received no cut in pay, and was not placed under unbearable work conditions. Instead, the trial court ruled that Appellant suffered only a transfer that, without more, was insufficient to support a claim of constructive discharge. Finally, the trial court further ruled that without proof of a constructive discharge, Appellant's claim of retaliation failed. As such, the trial court ruled that all of Appellant's claims were dismissed with prejudice. Appellant thereafter timely appealed to this Court.

## II.    ISSUES PRESENTED

Appellant raises two issues in this case, which are taken from her appellate brief and slightly restated:

---

[4] The trial court noted that no retaliation claim was pleaded in Appellant's complaint but nevertheless considered the statute of limitations as to such a claim.

1. Whether the trial court erred in granting Appellee's first motion for summary judgment as to all of Appellant's claims under the THRA for events occurring on or before September 6, 2016, in light of the evidence proffered by Appellant that should have been construed in favor of Appellant as the non-moving party.
2. Whether the trial court erred in granting Appellee's second renewed motion for summary judgment as to Appellant's claim of retaliation and constructive discharge under the THRA, in light of the evidence proffered by Appellant that should have been construed in favor of Appellant as the non-moving party.

## III.  STANDARD OF REVIEW

A trial court's "grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is de novo with no presumption of correctness." ***Bowers v. Estate of Mounger***, 542 S.W.3d 470, 477 (Tenn. Ct. App. 2017) (citations omitted). Consequently, we "must make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." ***Id.*** (quoting ***Rye v. Women's Care Ctr. of Memphis, MPLLC***, 477 S.W.3d 235, 250 (Tenn. 2015)). In reviewing a summary judgment motion on appeal, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." ***Shaw v. Metro. Gov't of Nashville & Davidson Cty.***, 596 S.W.3d 726, 733 (Tenn. Ct. App. 2019) (citations and quotations omitted).

## IV.  ANALYSIS

Here, Appellant raised only a single violation of the THRA in her complaint. Still, the trial court appears to have separated this single claim into three component parts: (1) the THRA hostile work environment claim related to sexual harassment; (2) the THRA claim for retaliation;[5] and (3) the constructive discharge. Regardless of how classified, we conclude that all of Appellant's claims are barred by the applicable statute of limitations. We begin with allegations of a hostile work environment and retaliation.

An employee must prove five elements in order to prevail on a claim for hostile work environment related to sexual harassment:

> (1) the employee is a member of a protected class; (2) the employee was subjected to unwelcomed sexual harassment; (3) the harassment occurred because of the employee's gender; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew, or

---

[5]Appellee asserts that the retaliation claim should be barred because it was not raised in Appellant's complaint. Because of our resolution of this appeal, we need not address that issue. As such, it is pretermitted.

should have known of the harassment and failed to respond with prompt and appropriate corrective action.

***Potter v. Yapp USA Auto. Sys., Inc.***, No. M2019-01351-COA-R3-CV, 2020 WL 2611681, at *3 (Tenn. Ct. App. May 22, 2020), *perm. app. denied* (Tenn. Oct. 8, 2020) (quoting ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 31 (Tenn. 1996)). "To be considered severe or pervasive enough to be actionable, the harassing conduct must be to such a degree that the workplace becomes so 'permeated with 'discriminatory intimidation, ridicule or insult'' that it 'alter[s] the conditions of employment.'" ***Id.*** (quoting ***Hawkins v. Anheuser-Busch, Inc.***, 517 F.3d 321, 333 (6th Cir. 2008)).

A THRA retaliation claim, on the other hand, requires proof of the following four elements:

> (1) that the employee engaged in an activity protected by the THRA;
> (2) that the exercise of the employee's protected rights was known to the employer;
> (3) that the employer subsequently took a materially adverse action against the employee; and
> (4) that there was a causal connection between the protected activity and the materially adverse action.

***Ferguson v. Middle Tenn. State Univ.***, 451 S.W.3d 375, 383 (Tenn. 2014) (citing ***Sykes v. Chattanooga Hous. Auth.***, 343 S.W.3d 18, 29 (Tenn. 2011)).

There is no dispute that both of these claims are governed by the one-year statute of limitations under Tennessee Code Annotated section 4-21-311(d), which provides that "[a] civil cause of action under this section shall be filed in chancery court or circuit court within one (1) year after the alleged discriminatory practice ceases[.]" Appellee contends that the trial court correctly ruled that any alleged discriminatory practice "cease[d]," at the latest, on September 6, 2016, when Appellant last came into work. As such, Appellee asserts that the trial court correctly ruled that all claims under the THRA were barred by the applicable statute of limitations. As we perceive it, Appellant argues that the discriminatory practice at issue, as to all claims, did not "cease[]" until September 12, 2016, the day that she asserts she was constructively discharged. Under the continuing violation doctrine, Appellant therefore contends that all illegal conduct that occurred prior to that date is actionable and not barred by the one-year statute of limitations.

The Tennessee Supreme Court explained in ***Booker v. The Boeing Co.***, 188 S.W.3d 639 (Tenn. 2006), that the THRA statute of limitations "adopts the 'continuing violation exception'" to the statute of limitations. ***Id.*** at 644 (quoting ***Weber v. Moses***, 938 S.W.2d 391 n.4 (Tenn. 1996)). The continuing violation doctrine "relieves a plaintiff from the burden of proving that the entire violation occurred within the limitations period." ***Spicer***

*v. Beaman Bottling Co.*, 937 S.W.2d 884, 889 (Tenn. 1996), *overruled on other grounds by Booker*, 188 S.W.3d at 649.[6] Our courts have recognized only two narrow situations in which the continuing violation doctrine applies. *Booker*, 188 S.W.3d at 643. The first situation arises "'where there is some evidence of *present* discriminatory activity giving rise to a claim of a continuing violation[.]'" *Id.* (quoting *Spicer*, 937 S.W.2d at 889–90). "Key to establishing this exception is proof that at least one of the forbidden discriminatory acts occurred within the relevant limitations period." *Id.* (quoting *Spicer*, 937 S.W.2d at 889). The second situation arises when "'there has been a longstanding and demonstrable policy of discrimination such as an established and repeated pattern of paying men more than women.'" *Id.* (quoting *Spicer*, 937 S.W.2d at 889). "To constitute such an established pattern, the plaintiff must clearly demonstrate some 'overarching policy of discrimination,' and not merely the occurrence of an isolated incident of discriminatory conduct." *Spicer*, 937 S.W.2d at 889–90 (quoting *Janikowski v. Bendix Corp.*, 823 F.2d 945, 948 (6th Cir. 1987)).

Of course, the THRA statute of limitations expressly provides that the claim accrues when the discriminatory practice "ceases." The term "'ceases' connotes and contemplates an ongoing course of conduct." *Booker*, 188 S.W.3d at 648. As we have explained,

> Continuing violations, such as a discriminatory pay rate, "cease" when the conduct at issue ends. *See* [*Booker*, 188 S.W.3d at 648]. In contrast, discrete discriminatory acts cease "as of the time [they] occur[ ], not as of the time the consequences of the act[s] cease." *Id.* at 645. Consequently, the THRA's statute of limitations "does not operate to extend the limitations period on discrete acts of discrimination." *Id.* at 647.

*Jackson v. City of Cleveland*, No. E2015-01279-COA-R3-CV, 2016 WL 4443535, at *5 (Tenn. Ct. App. Aug. 22, 2016), *perm. app. denied* (Tenn. Dec. 15, 2016). The Tennessee Supreme Court has indicated that "a termination or a denial of promotion is a discrete act" to which the continuing violation doctrine does not apply to extend the statute of limitations. *Booker*, 188 S.W.3d at 648.

Nothing in Appellant's brief on appeal contends that Appellee engaged in a longstanding policy of discrimination akin to paying women less than men. Instead, Appellant contends that she may bring her lawsuit for all conduct, even that occurring outside the limitations period, so long as "the discriminatory conduct is sufficiently related to the conduct occurring within the limitations period." *Id.* Thus, as we perceive it, Appellant contends that she presented "evidence of *present* discriminatory activity giving

---

[6] Specifically, the *Booker* Court overruled *Spicer* "to the extent that it imposed a 'discovery rule' on continuing violation claims." 188 S.W.3d at 649. That is not at issue in this appeal.

rise to a claim of a continuing violation[.]" *Id.* at 643. To meet her burden to show the application of the continuing violation doctrine under this theory, Appellant must show "that at least one of the forbidden discriminatory acts occurred within the relevant limitations period." *Id.* According to Appellant, the hostile work environment and retaliation were ongoing until she submitted her resignation on September 12, 2016, which she argues was a constructive discharge. Therefore, because she filed her complaint exactly one year later, she argues that all of her claims under the THRA were timely.

We agree that a hostile work environment claim may be timely when only a single act that contributes to the hostile environment occurs within the limitations period. *See Booker*, 188 S.W.3d at 646 (citing *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 117, 122 S. Ct. 2061, 153 L.Ed.2d 106 (2002)) ("[A] hostile environment claim is not made timely by linking the "component acts" together through the continuing violation doctrine. Rather, the hostile environment constitutes one unified, unlawful employment practice, and filing is timely as long as some act contributing to the hostile environment occurs within the limitations period."). We cannot agree, however, that such an act occurred here.

Importantly, the only relevant date that occurred within the statute of limitations period is September 12, 2016. The undisputed facts presented in the trial court make clear that the only act that occurred on September 12, 2016, was Appellant's resignation. There is no proof whatsoever that Appellee, its agent, or its employees engaged in any behavior that could reasonably be construed as hostile on that date. *See Bazemore v. Performance Food Grp., Inc.*, 478 S.W.3d 628, 635 (Tenn. Ct. App. 2015) (quoting *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996)) ("A hostile work environment exists when 'conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'"). Indeed, there is no evidence that Appellee directed conduct of any kind toward Appellant on September 12, 2016. But Appellant contends that her resignation on that date was merely a continuation of the retaliation she faced on September 6, 2016, which she asserts resulted from her complaints regarding the hostile work environment that she endured prior to June 26, 2016. Indeed, Appellant largely relies on the reassignment as the continuing conduct that makes her claims timely; according to her brief, "[t]he retaliation in this matter was ongoing, as the reassignment of Appellant was continuing and still in effect at the time of her constructive discharge."

Respectfully, we cannot agree. As we perceive it, a reassignment is a discrete act, rather than a continuing one. As previously discussed, the Tennessee Supreme Court has contrasted ongoing discriminatory pay, which is a continuing act, with discrete acts, "such as termination, failure to promote, denial of transfer, or refusal to hire[.]" *Booker*, 188 S.W.3d at 646, 648 ("[A] discriminatory pay rate is not a discrete act in the same sense that a termination or a denial of promotion is a discrete act."). "Something is 'discrete' if it is 'separate and distinct; not attached to others; unrelated.'" *Id.* (quoting *Webster's New*

*World Dictionary* (2d ed. 1980)). When the discriminatory practice is discrete under this definition, "each alleged act of discrimination must be evaluated independently to determine whether it occurred within the limitations period." ***Gilbert v. Choo-Choo Partners, L.P.***, No. E2006-01507-COA-R3-CV, 2007 WL 1049270, at *6 (Tenn. Ct. App. Apr. 9, 2007), *perm. app. denied* (Tenn. Oct. 22, 2007) (citing ***Booker***, 188 S.W.3d at 646 (citing ***Morgan***, 536 U.S. at 117)). Under this framework, courts considering THRA claims have held that demotions, terminations, failure to hire, failing to accommodate a disability, denial of promotion, and a one-time pay reduction were discrete acts. *See **Austion v. City of Clarksville***, 244 Fed. Appx. 639, 649 (6th Cir. 2007) (denial of promotion); ***Jenkins v. Trane U.S., Inc.***, No. 3:12-CV-1280, 2013 WL 3272489, at *7 (M.D. Tenn. June 27, 2013) (failure to hire and failure to accommodate a disability); ***Wheat v. Benton Cty., Tennessee***, No. 1:08-CV-1171, 2009 WL 10699139, at *6 (W.D. Tenn. Aug. 27, 2009) (one-time pay reduction); ***Koon v. Kohler Co.***, No. 1:05-CV-01151, 2008 WL 11411527, at *4 (W.D. Tenn. Nov. 18, 2008) (failure to promote a temporary worker to a permanent position); ***Cole v. Black & Decker (US), Inc.***, No. 07-1021, 2008 WL 2704533, at *4 (W.D. Tenn. July 3, 2008) (denial of promotion); ***Jackson***, 2016 WL 4443535, at *8 (termination and requesting an investigation); ***Gilbert***, 2007 WL 1049270, at *6 (demotion).

Although it does not involve a reassignment, this case is somewhat analogous to ***Jackson v. City of Cleveland***. In that case, the plaintiff alleged, *inter alia*, that the defendant created a hostile work environment and retaliated against her by instigating an investigation of her with the TBI and terminating her employment. ***Jackson***, 2016 WL 4443535, at *8. The termination of the plaintiff's employment occurred more than one year prior to the filing of the complaint. As such, the Court of Appeals held that the plaintiff's hostile work environment claim was barred by the statute of limitations: "Plaintiff's employment ended on September 12, 2011. Thus, Defendant's conduct could not have interfered with Plaintiff's work performance or created an intimidating work environment for her after that date. Consequently, Plaintiff's hostile work environment accrued on September 12, 2011, and based on that date, this claim is time-barred." *Id.* at *7 (citation omitted). Thus, the termination date was the important date for purposes of determining when the hostile work environment "ceased" because the defendant did not interfere with the plaintiff's work or create a hostile work environment for the plaintiff after that date.

With regard to the retaliation claim, the Court noted that the only event that occurred after September 2011 was a TBI interview in January 2012. As the court explained, in order for the plaintiff's retaliation claim to survive, the defendant's "pre-termination conduct must be linked with the post-termination investigation." *Id.* (citing ***Booker***, 188 S.W.3d at 643). While the court noted that an investigation may constitute an ongoing violation, the specific conduct at issue, the request to investigate, was held to be a discrete act that occurred prior to the limitations period. *Id.* at *8. Importantly, the defendant itself was not conducting the investigation and the only conduct of the defendant was to make alleged false statements about the plaintiff and ask for an investigation. Thus, "the act of requesting the investigation was not a recurring act like a bi-weekly paycheck." Instead, "[r]equesting

an investigation was more akin to an isolated decision—a discrete act—than an ongoing course of conduct. As a result, the TBI investigation is a consequence of the Department's request rather than a continuation of any conduct by the Department or Defendant." *Id.*

The same is true of the reassignment in this case. A reassignment is closely analogous to termination, failure to promote, or demotion, all of which have been previously held to constitute discrete acts. *Booker*, 188 S.W.3d at 646. Here, Appellant was reassigned on September 6, 2016. Despite the fact that it may have been motivated by Appellant's complaints about her workplace, the reassignment itself was an isolated decision. *Jackson*, 2016 WL 4443535, at *8. Moreover, the act of reassignment was completed on that date. The alleged constructive discharge that occurred on September 12, 2016, was not a continuation of the retaliation, but a "consequence" of it. *Id.* The reassignment therefore ceased at the time it occurred, rather than "the time the consequences of the act[] cease[d]." *Id.* (quoting *Booker*, 188 S.W.3d at 645).

The undisputed facts show that after the reassignment, Appellant did not return to work until she submitted her resignation remotely on September 12, 2016; this email from Appellant to Appellee was the sole contact between the parties within the limitations period. Thus, even if we were to accept as true Appellant's contention that she was suffering an ongoing barrage of hostile conduct by Appellee that culminated in her reassignment, the reassignment itself was a discrete act that ceased at the time it occurred, not when Appellant's employment ended. Moreover, there is no proof that Appellee subjected Appellant to any "act[s] contributing to the hostile environment" after the discrete act of reassignment,[7] much less within the single day of her employment within the limitations period.[8] *Booker*, 188 S.W.3d at 646 (citing *Morgan*, 536 U.S. at 117). In other words, even though the termination of Appellant's employment came later, after September 6, 2016, Appellee "could not have interfered with [Appellant's] work performance or created an intimidating work environment for her" because she simply was not present at work. *Jackson*, 2016 WL 4443535, at *7. In sum, because the undisputed proof shows no further acts taken by Appellee following the discrete act of reassignment, there was no proof of even a single discriminatory act that occurred within the limitations

---

[7] Appellant's brief illustrates this point, as her recitation of the facts underlying her claim of a hostile work environment ends with the events of September 6, 2016. For example, this sentence from Appellant's brief summarizes what facts support her claim for a hostile working environment: "The hostile environment included the sexual harassment to which Appellant was subjected; the retaliation directed at Appellant by her colleagues, her supervisor, Dr. May; and ultimately the reassignment and change in responsibilities." (Internal citations omitted). Thus, Appellant admits that the reassignment was the last act that occurred that was allegedly hostile toward her.

[8] Moreover, outside of the reassignment, the bulk of the harassment that is alleged occurred months earlier. Indeed, Appellant's complaint, which was never amended, states that Appellee created a hostile working environment only by failing to "remedy [the] sexual harassment [Appellant] was subjected to." We note, however, that by the time of her September 6, 2016 reassignment, Appellant had not suffered any alleged sexual harassment for months, as Appellant had been on leave since June 26, 2016, and the sexual harassment by Dr. May had ended even before that time.

period to support her claim of retaliation or a hostile work environment.

The same appears to be true of Appellant's claim for constructive discharge. In general, "a constructive discharge arises when an employer permits a hostile working environment to render an employee's working conditions so intolerable that resignation is the employee's only reasonable alternative." *Frye v. St. Thomas Health Servs.*, 227 S.W.3d 595, 612 (Tenn. Ct. App. 2007) (discussing a second form of constructive discharge not at issue in this case). But "'[b]arring unusual circumstances . . . a transfer at no loss of title, pay, or benefits does not amount to a constructive discharge or adverse employment action.'" *Id.* at 612–13 (quoting *Darnell v. Campbell County Fiscal Ct.*, 731 F. Supp. 1309, 1313 (E.D. Ky. 1990)). Thus, where an employee was merely transferred to another position and suffered "no material loss in pay, benefits, title, or responsibilities," we held that the altered working conditions were "in no way so difficult or unpleasant that a reasonable person would resign their employment" so as to sustain a claim for constructive discharge. *Id.* at 613; *see also* *Gordon v. W.E. Stephens Mfg. Co.*, No. M2007-01126-COA-R3-CV, 2008 WL 4254584, at *7 (Tenn. Ct. App. Sept. 16, 2008) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004)) (holding that an adverse employment action occurs "if the plaintiff's resignation is a 'reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she would face unbearable working conditions'").

Constructive discharge, however, "is not a cause of action in and of itself." *Lemon v. Williamson Cty. Sch.*, 618 S.W.3d 1, 14 (Tenn. 2021) (citing *Crews v. Buckman Lab'ys Int'l, Inc.*, 78 S.W.3d 852, 865 (Tenn. 2002)). As our supreme court has explained,

> A constructive discharge claim requires a viable underlying cause of action. *See* *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 33 (Tenn. 1996) (finding constructive discharge requires subjection to intolerable and illegal working conditions); *see also* *Turner v. Anheuser–Busch, Inc.*, 7 Cal. 4th 1238, 32 Cal. Rptr. 2d 223, 876 P.2d 1022, 1030 (1994) (noting plaintiff must show underlying cause of action to obtain damages for constructive discharge that is neither tort nor breach of contract); *Vagts v. Perry Drug Stores, Inc.*, 204 Mich. App. 481, 516 N.W.2d 102, 104 (1994) (stating "constructive discharge is not in itself a cause of action" but merely a defense to an allegation that employee voluntarily resigned). The plaintiff's failure to state a cause of action under the THRA is fatal to his constructive discharge claim. Accordingly, the plaintiff's claim for constructive discharge is without merit.

*Phillips v. Interstate Hotels Corp. No. L07*, 974 S.W.2d 680, 687 (Tenn. 1998).

Here, Appellant's constructive discharge claim rests on her allegations of a hostile

- 11 -

working environment and retaliation. But, as previously explained, no hostile actions were taken against Appellant in the time period allowed by the statute of limitations. And, again, the reassignment, as a discrete act, ceased at the time it occurred, rather than upon Appellant's resignation. *Booker*, 188 S.W.3d at 643. The conduct that Appellant alleges caused her to resign, therefore, simply did not take place within the limitations period. Because the hostile work environment and retaliation claims were time-barred, these claims were properly dismissed as failing to state claim. *See Goetz v. Autin*, No. W2015-00063-COA-R3-CV, 2016 WL 537818, at *3 (Tenn. Ct. App. Feb. 10, 2016) (citation omitted), *perm. app. denied* (Tenn. June 24, 2016) ("A complaint subject to dismissal based on the expiration of the statute of limitations fails to state a claim upon which relief can be granted."). As such, there is no viable cause of action under the THRA to which Appellant's claim of constructive discharge may attach. *See Basham v. Tillaart*, No. M2002-00723-COA-R3-CV, 2003 WL 21780974, at *7 (Tenn. Ct. App. July 31, 2003) (holding that a claim barred by the statute of limitations "was no longer viable"). We therefore affirm the trial court's dismissal of Appellant's THRA claim, albeit on a different basis. *See Hill v. Lamberth*, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001) (citing *Wood v. Parker*, 901 S.W.2d 374 (Tenn. Ct. App.1995)) ("[T]his Court may affirm the trial court's decision when rendered on different grounds."). All of Appellant's claims were therefore properly dismissed.

## V.  CONCLUSION

The judgment of the Davidson County Circuit Court is affirmed, and this cause is remanded for further proceedings. Costs of this appeal are taxed to Appellant, Teresa McCain, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

- 12 -